# IN THE COURT OF APPEALS OF IOWA

No. 25-0298
Filed May 7, 2025

IN THE INTEREST OF A.S.,
Minor Child,

D.S., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Jessica R. Noll, Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Kevin J. Huyser of Rensink Pluim Vogel and Huyser, Orange City, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Debra Sue De Jong, Orange City, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his child, A.S., born in 2014.[1] He contends that the State failed to establish the statutory grounds for termination, the State failed to provide reasonable efforts toward reunification, and termination is not in the child's best interests. Upon our de novo review, we affirm termination of the father's parental rights.

### I.      *Background Facts and Proceedings.*

From 2016 to 2023, the Iowa Department of Health and Human Services (the department) was intermittently involved with this family.[2] The allegations focused primarily on the parents' illegal substance use, including reports that the father administered one of the children's medications using a "drug needle." But additional child abuse assessments were founded due to physical abuse, domestic violence, and failure to provide the children with proper food and utilities. Throughout these earlier proceedings, the juvenile court removed the children, including A.S., from their parents' custody and placed them in a guardianship with their maternal grandmother.

In May 2023, the department became involved again after the mother pushed A.S.'s elder sister out of a moving vehicle. The department opened another investigation and discovered that A.S. was not living with her guardian as expected. Instead, A.S. was sleeping in a tent with her father in a nearby city park.

---

[1] The mother's parental rights to A.S. were also terminated. Because she does not appeal, we do not address her further other than to describe the facts leading up to termination.

[2] There were additional children living in the home during this time period, who are not the subjects of this appeal.

Due to these events and the grandmother's desire to relinquish her role as guardian, the court terminated the guardianship. The court then removed A.S. and placed her with a foster family.

In 2023, the father was homeless, unemployed, and lacked a driver's license. And while he eventually secured housing, a stable job, and a temporary license, he never addressed the department's primary concern, which was his illegal substance use. Throughout the proceedings, the father refused drug testing several times; when he did comply, on one occasion, he tampered with the sweat patch, and on another, he tested positive for methamphetamine. And despite completing a substance use evaluation that recommended treatment, the father never consistently participated. In the week leading up to the termination hearing, the father missed two appointments alone. The department testified that the father had to participate in remedial programming twice as a consequence for missed appointments. Yet the father still maintained at the termination hearing that he had no problems with substance use and testified he should not "have to prove his sobriety to anyone."

After the juvenile court determined that the father "has been his own barrier to making progress," it directed the State to proceed to termination. The State complied, and a termination hearing occurred December 2024, after which the juvenile court terminated the parents' parental rights. The father appeals.

## II.     Review.

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's

findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

### III.    Discussion.

Iowa courts use a three-step analysis to review termination proceedings, in which we determine whether: (1) the statutory grounds for termination have been established, (2) termination is in the best interests of the child, and (3) a permissive exception applies. *Id.* at 472–73. However, "[o]ur primary concern in termination proceedings has always been the best interests of the child." *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). We review each of the father's arguments in turn.

#### A. Statutory Grounds for Termination.

The juvenile court found the State proved by clear and convincing evidence that termination of the father's parental rights was appropriate under paragraphs (f), (i), and (*l*) of Iowa Code section 232.116(1) (2024). While the father argued against each ground, "we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We therefore confine our analysis to paragraph (f), in which the court may terminate if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father challenges only the fourth element: whether A.S. could be returned to his custody.

We agree with the juvenile court that A.S. could not be returned to her father's custody. The father cites his more recent progress, such as securing housing and employment, as evidence that A.S. could return home.[3] But while the father made some progress in other areas, he refused to cooperate with the department with drug testing and other substance-use services. The court described the father's approach to services as "openly def[ying] court orders." The father refused to comply with drug testing, citing privacy concerns. When he finally cooperated, the father tested positive for methamphetamine, although he denied any substance use. When he was recommended to complete substance-use and mental-health treatments, he never consistently participated.

Instead of taking accountability for his actions, the father blames the department for failing to provide certain services. The father specifically cites transportation issues, lack of visitation, and his denied request for a parent partner as evidence the department did not provide reasonable efforts. But we find the department offered a litany of services, most of which the father refused. To alleviate transportation issues, the department made referrals to telehealth treatment, which the father never participated in, and utilized at-home drug testing.

---

[3] The father also shifts blame for his lack of substance-use cooperation on the department in what we interpret as a reasonable-efforts challenge. *See* Iowa Code § 232.102(6) (requiring the department "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). Because the reasonable-efforts requirement is "part of [the State's] ultimate proof the child cannot be safely returned to the care of a parent," we consider the services offered and the father's response to determine whether the statutory grounds have been met. *See L.T.*, 924 N.W.2d at 527 (citation omitted).

But the department also testified that it had to resort to in-person drug testing after the father refused to show. The department also offered regular visitation, and while the father was more consistent with visitation than with treatment, he declined additional visits based on his work schedule. As to the father's request for peer support, the department testified that while it made efforts to obtain one, there were no eligible parent partners in the area. Upon our own review of the record, we do not agree with the father's attempts to shift blame to the department; instead, we find the department went above and beyond to support the father's reunification with A.S. Because the father failed to take advantage of the services offered and address the department's concerns, we find that A.S. could not be returned to his custody. *See A.B.*, 815 N.W.2d at 778 (considering a "parent's past performance" to indicate "the quality of the future care that parent is capable of providing" (citation omitted)).

*B. Best Interests of the Child.*

The father also contends that termination is not in A.S.'s best interests. To determine the best interests of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (citation omitted). The father has made limited progress, and after nearly ten years of uncertainty, A.S. deserves permanency. While the record supports the father's argument that he and A.S.

are very bonded, *see In re L.A.*, No. 24-2086, 2025 WL 855764, at *4 (Iowa Ct. App. Mar. 19, 2025) (finding evidence of a parent-child bond is relevant to the best-interests analysis), this does not outweigh his inability to care for her, *see In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018) (finding a parent's "refus[al] to acknowledge or address the concerns giving rise to removal" support termination). Further, in the two years since her removal and placement into foster care, A.S. has become very bonded with her foster family, who testified they would "strongly consider adopting" should termination occur. *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016) (considering the child's favorable integration into their foster placement to support termination). Accordingly, we find termination of the father's parental rights is in A.S.'s best interests.

## IV. Disposition.

Because the statutory grounds for termination have been met and termination is in the best interests of the child, we affirm the termination of the father's parental rights to his child.

**AFFIRMED.**